**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO: 0:20-cv-60256-RS**

VERED WEINSTOCK,

     Plaintiff,

     v.

STORM TIGHT WINDOWS, INC.,
LEE BROWN, individually, and
KATHY BROWN, individually,

     Defendants.

_____/

STORM TIGHT WINDOWS,
INC.,

     Counter-Plaintiff

     v.

VERED WEINSTOCK,

     Counter-Defendant.

_____/

**<u>COUNTER-DEFENDANT'S EXPEDITED MOTION FOR ATTORNEY'S FEES AND COSTS</u>**

     Counter-Defendant, VERED WEINSTOCK ("Ms. Weinstock"), by and through undersigned counsel, and pursuant to S.D. Fla. L.R. 7.3, Fla. Stat. § 448, 28 U.S.C. § 1927, the inherent authority of this Honorable Court, and D.E. 96, files her Expedited Motion for Attorney's Fees and Costs[1], as follows:

**I.**     **<u>INTRODUCTION</u>**

     Storm Tight Windows, Inc. ("STW") embraced nothing short of a scorched earth defense strategy in this case. This included STW's denial of all material allegations in the operative

---

[1] This Honorable Court's Order dated December 1, 2020, requires Ms. Weinstock to file this Motion on an expedited basis and by no later than December 7, 2020. *D.E. 96.* This briefing schedule conflicts with the time limits and procedures set forth within S.D. Fla. L.R. 7.3. Accordingly, Ms. Weinstock has made attempts to nevertheless comply with the pre-filing requirements of the local rules by serving a draft of the Motion on STW and attempting to resolve the issues addressed herein to no avail.

Complaint, its express refusal to entertain early good-faith settlement discussions, its decision to engage in litigation strategies that lacked basic civility, its filing of a baseless Counterclaim against Ms. Weinstock, and conducting 3 separate "focus groups" to ascertain their likelihood of success at trial. During the course of this heavily litigated lawsuit the Counterclaim was exposed for exactly what it was – a desperate bad-faith attempt by STW and its counsel to intimidate Ms. Weinstock and chill invocation of her federal rights while needlessly increasing her attorney's fees and costs. STW failed to ever provide any damage model or calculation concerning the claims for unjust enrichment or conversion.  Even after FLSA liability was well established in this case in May 2020, STW remained unwilling to entertain any kind of resolution, thus triggering protracted litigation of the wage claim and requiring Ms. Weinstock to defend against the Counterclaims filed against her.  STW likewise refused to drop its Counterclaim even after its own human resources director debunked the claim.  Ms. Weinstock's several attempts to resolve this case are well documented and provided below. Only after STW was faced with a fully briefed summary judgment motion did the Defendants finally concede that Ms. Weinstock was, in fact, owed unpaid wages.  At that time, STW tendered an Offer of Judgment for the FLSA claim in the amount of $4,000.00 payable to Ms. Weinstock – an amount that is virtually all of the unliquidated wages sought.  The Offer of Judgment, however, sought to undercut Ms. Weinstock's expenses incurred in this case and provided $25,000.00 for attorney's fees and costs incurred in obtaining recovery under the FLSA.  Nothing has been offered to compensate Ms. Weinstock for the attorney's fees and costs incurred in successfully defending against the baseless Counterclaim filed by STW concerning payment of wages. Immediately after Ms. Weinstock accepted the Offer of Judgment STW completely abandoned its Counterclaims and conceded its defeat by entering a dismissal **with prejudice**. STW's dismissal of its Counterclaims with prejudice qualifies Ms. Weinstock as the prevailing party on the Counterclaims in this case.  The undersigned firm now respectfully seeks attorney's fees and costs incurred in defending against the baseless Counterclaim that was abandoned by STW **after** summary judgment was fully briefed.  Fla. Stat. § 448.08 and 28 U.S.C. § 1927 provide a basis for this Court to award attorney's fees to Ms. Weinstock for her successful defense of the Counterclaims.  Alternatively, this Honorable Court has the inherent authority to award Ms. Weinstock attorney's fees based on the circumstances presented herein.  Considerable effort has been made by the undersigned counsel to resolve this issue without Court intervention. STW, however, has rejected all offers and wishes to litigate this issue before the Court.

## II.    FACTS

The history of this acrimonious dispute dates back to February 6, 2020, when Ms. Weinstock filed her Complaint against Defendants, STW, Lee Brown ("Mr. Brown") and Kathy Brown ("Mrs. Brown") (collectively referred to as "Defendants"). *D.E. 1.*  Ms. Weinstock, a former employee of STW sought recovery of unpaid overtime wages from hours she worked during her employment period with the Defendants. *Id.*  Plaintiff's Complaint alleged one count against Defendants for violation of the federal overtime provisions of the Fair Labor Standards Act ("FLSA"). *Id.*  Defense counsel, Kenneth Minerley, Esquire ("Mr. Minerley" or "defense counsel") filed an Answer and Affirmative Defenses on behalf of the Defendants on March 4, 2020. *D.E. 10; see, also,* The Answer and Affirmative Defenses denied all material allegations of Ms. Weinstock's Complaint.[2] *D.E. 10.*

### Plaintiff's Efforts to Reach Early Resolution

On May 7, 2020, Mr. Richards contacted Mr. Minerley to inquire about an early resolution to this case before the Parties were required to attend a settlement conference before the Hon. Alicia Valle. *See Declaration of Jordan Richards, Esquire, and Attached Lodestar attached hereto as Exhibit "A."* Mr. Minerley did not respond and refused to engage in any settlement discussion. *Id.* On May 11, 2020, and May 12, 2020, Mr. Richards again attempted to address early resolution with Mr. Minerley so the Parties would not waste court resources at a settlement conference if they could resolve the matter beforehand. *Id.* These attempts were all futile. *Id.* On May 19, 2020, the Parties attended a settlement conference with Magistrate Judge Valle. *D.E. 20.* This settlement conference *impassed* after 2 hours. *Id.* Following the unsuccessful settlement conference, Mr. Richards contacted Mr. Minerley and advised that if the Defendants were interested in resolving that Mr. Richards would waive recovery of any time spent preparing for and attending the settlement conference that day. *Id.* STW refused. *Id.* On May 20, 2020, undersigned counsel sent a formal written correspondence to Mr. Minerley proposing resolution. *Id.* Follow-up letters concerning resolution were sent to Mr. Minerley on June 8, 2020, and June 25, 2020. *Id.*

---

[2] In the earlier stages of this lawsuit, another Plaintiff, TAMARA GANDHI ("Ms. Gandhi"), had filed a consent to join. *D.E. 22.* Subsequently, a Motion for Conditional Certification was fully briefed with the Court. *D.E. 23.* Ms. Gandhi ultimately withdrew her consent to join the lawsuit which resulted in the undersigned firm withdrawing the Motion for Conditional Certification. *D.E. 50; D.E. 51.* None of the fees or costs sought in this motion are attributable to any work performed on anything related to Ms. Gandhi or the Motion for Conditional Certification.

**<u>STW's Threats of Litigation Against Ms. Weinstock</u>**

Earlier in the litigation, on March 26, 2020, Mr. Richards' associate attorney Jake Blumstein ("Mr. Blumstein") had a Rule 16 Scheduling Conference telephone call with Mr. Minerley regarding the scheduling of depositions in this case. *See Declaration of Jake Blumstein, Esquire attached hereto as Exhibit "B."* During this call, Mr. Minerley threatened that STW would pursue unspecified claims against Ms. Weinstock. *Id.* In an effort to obtain more information regarding Mr. Minerley's vague threat of these purported claims, Mr. Blumstein sent the following e-mail to Mr. Minerley:

> [P]lease send me the factual predicate for the threatened litigation against Ms. Weinstock that you mentioned yesterday.  This will allow me to have a more candid conversation with her about your clients' accusations.  **With the sparse information you have already provided, we believe your clients' accusations to be completely baseless, and to be grounds for an FLSA retaliation claim – especially because you indicated there was no evidence**.

*Exhibit "B."*

Mr. Minerley provided the following response:

> Jake you misconstrued my conversation with you.  I stated that my clients are investigating the issue with Miss Weinstock.  And if appropriate they would be bringing a separate lawsuit against her.[3] My inquiry was whether you would be representing her in that claim.

*Id.*

Mr. Minerley failed to provide factual information concerning the litigation he threatened on behalf of STW on March 26, 2020.  *Exhibit "B."* Then, on May 1, 2020, Mr. Minerley's associate attorney Jackson Pellingra, Esquire ("Mr. Pellingra") advised the undersigned firm that STW was "currently in the process of drafting [its] amended answer, affirmative defenses and counterclaim to the Complaint" and that he looked "forward to speaking with you next week regarding our counterclaim."  *Exhibit "A."*  This statement from Mr. Pellingra, of course, contradicts Mr. Minerley's prior statement that STW would be "bringing a separate lawsuit against [Ms. Weinstock]."

---

[3] Had STW intended to file a separate lawsuit against Ms. Weinstock it would have done so. Instead, STW pursued baseless Counterclaims against Ms. Weinstock to assert pressure on her in this case.

Over the next 2 weeks Mr. Richards never heard from Mr. Minerley or Mr. Pellingra concerning the purported Counterclaim. On May 14, 2020, Mr. Richards sent the following e-mail:

> When are you withdrawing your individual employer defense and amending your answer? You told us you would do this 2 weeks ago. **You also did not contact us about any kind of counterclaim last week**. I'm trying to narrow these issues so that we can have an effective settlement conference next week.

*Exhibit "A."*

Mr. Minerley sent the following response:

> We are working on finalizing the amended answer and counterclaim for **theft of wages** against Weinstock. We will amend then we plan on circulating it later today or early tomorrow for conferral and filing.

*Id.*

On May 22, 2020, while Mr. Richards was in his 5th hour of deposing Mr. Brown, Mr. Minerley halted the deposition so he could take a "brief recess." During this break Mr. Minerley filed the Motion for Leave to File Amended Answer and Add Counterclaim. *D.E. 38.* Mr. Minerley returned to the deposition and announced that he had just filed the document with the Court in the middle of a deposition.

### STW's Counterclaim

STW asserted two counts against Ms. Weinstock within its Counterclaim: (i) conversion; and (ii) unjust enrichment. *D.E. 42.* Both of these Counterclaims alleged the exact same factual predicate – a dispute over payment of wages - and sought the exact same relief - return of wages that STW had paid to Ms. Weinstock during her employment. *Id.* STW's refusal to provide any actual information regarding its purported claims against Ms. Weinstock continued well after the Counterclaim was filed. STW failed to *ever* provide any damage model or calculation for its Counterclaim as required by Rule 26(a).[4] STW likewise failed to ever provide Ms. Weinstock with the requisite notice and/or demand before initiating the conversion claim against her. Given the complete dearth of information STW provided to Ms. Weinstock (and this Court) on its

---

[4] STW amended its Rule 26(a) disclosures on at least 3 occasions during the lawsuit. None of these amendments included a damage calculation for its Counterclaim. The most recent amendment occurred on June 5, 2020, and contained the following language: "Defendant Storm Tight Windows has counterclaimed for damages arising out of payments to Plaintiff Vered Weinstock for hours not worked. Defendant basis [*sic*] its claim on Plaintiff's time records, adjustments to same by Bobby Brewster, and Plaintiff's communications with Bobby Brewster." *D.E. 74-1.*

Counterclaim there is good-faith basis for the claims to have been pursued.  STW's failure to assert any actual damages further proves that STW and its counsel engaged in blind pursuit of these claims in bad faith.

## Summary Judgment and the Subsequent Offer of Judgment

On August 14, 2020, Ms. Weinstock moved for final summary judgment on STW's Counterclaim.  *D.E. 65.*  Ms. Weinstock drafted and filed a Reply memorandum in support of her summary judgment motion on September 25, 2020. *D.E. 74.*  On November 12, 2020, after summary judgment was fully briefed, Defendants tendered an Offer of Judgment to Ms. Weinstock.  *D.E. 82-1.*  The Offer of Judgment provided $4,000.00 payable to Ms. Weinstock to satisfy her FLSA claim and provided an additional $25,000.00 in attorney's fees and costs for the undersigned firm to cover expenses incurred in successfully prosecuting the FLSA claim.  *Id.*  The Offer of Judgment was silent as to the Counterclaim that STW had filed against Ms. Weinstock and did not specify how much of the $25,000.00 was for costs and how much was for fees.  *Id.* On November 13, 2020, Ms. Weinstock filed her Notice of Acceptance of the Rule 68 Offer of Judgment.  *D.E. 82.*  STW then advised this Honorable Court that it no longer wished to pursue its Counterclaim against Ms. Weinstock. *D.E. 87; D.E. 88.* The Parties filed a Joint Notice of Stipulation of Dismissal of Counterclaim **with Prejudice** on December 1, 2020.  *D.E. 94; D.E. 95.*

By dismissing its own Counterclaim with prejudice STW has conceded defeat and Ms. Weinstock is the prevailing party on the Counterclaims for conversion and unjust enrichment.  For a period of approximately 10 months Ms. Weinstock has not only had to resort to the federal courts to recover her unpaid overtime wages, but has also endured a baseless Counterclaim that was filed against her in bad-faith and for no reason other than to harass, annoy, and discourage her from pursuing recovery of her lawfully earned wages. As set forth below, there were *several* times during this lawsuit when STW should have abandoned the Counterclaim. It did not. The undersigned firm respectfully requests that this Honorable Court award attorney's fees and costs based upon the supporting documentation provided herein and the applicable and controlling case law.  The hourly rates sought by the timekeepers in this case have been previously approved in this judicial district, and the total success obtained in this case for Ms. Weinstock is, most respectfully, nothing short of outstanding. On December 1, 2020, this Honorable Court ordered

Ms. Weinstock to file a motion for attorney's fees and costs by no later than December 7, 2020. Undersigned counsel has made an effort to resolve these issues to no avail.

### III.  MEMORANDUM OF LAW

#### a.  Ms. Weinstock is Entitled to Recover Reasonable Attorney's Fees as a Prevailing Counter-Defendant in this Lawsuit

A prevailing party analysis requires a determination of whether a court-ordered material alteration of the legal relationship between the parties has occurred.  *See, e.g.,* Scream, Inc. v. Smoke This Too, LLC, 2017 WL 3025864 at *2 (S.D. Fla. 2017) *citing* Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003).  The Eleventh Circuit has found a "material alteration" in: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties.  *See, e.g.,* Smalbein, 353 F.3d at 905.  **A voluntary dismissal with prejudice, entered by stipulation of the parties, is considered final judgment on the merits of a case**.  *See, e.g.,* Citibank, N.A. v. Data Lease Financial Corp., 703 F.Supp. 80 (S.D. Fla. 1989); *see, also,* Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258 (N.D. Cal. 1991). Indeed, a voluntary dismissal of a claim with prejudice operates as an adjudication on the merits in favor of a defendant, and the defendant is considered the prevailing party.  *See, e.g.,* Andrews v. CSX Transp., Inc., 737 F.Supp.2d 1342 (M.D. Fla. 2010).

On November 30, 2020, the Parties filed a Stipulation of Dismissal with Prejudice as to the Counterclaims filed by STW in this case.  *D.E. 94; D.E. 95.*  This stipulation of dismissal with prejudice operates as an adjudication on the merits in favor of Ms. Weinstock and renders Ms. Weinstock the prevailing party on the Counterclaims filed against her by STW. *See, e.g.,* Citibank, N.A., 703 F.Supp. 80; Ventritex, Inc., 775 F.Supp. 1258; Andrews, 737 F.Supp.2d 1342 (M.D. Fla. 2010).

#### i.  Attorney's Fees are Appropriate Under Fla. Stat. § 448.08

Under Florida law, a prevailing party is entitled to reasonable attorney's fees and costs in claims concerning payment of wages. *Fla. Stat. § 448.08.* This includes claims for conversion. *See, e.g.,* Ocean Club Community Ass'n, Inc. v. Curtis, 935 So.2d 513 (Fla. 3rd DCA 2006) (Prevailing party on a conversion of wages claim was entitled to reasonable attorney's fees under F.S. 448.08). Application of a multiplier for attorney fees awarded in a wage dispute is appropriate under Florida law.  *See, e.g.,* National Portland Cement Co. v. Goudie, 718 So.2d 274 (Fla. 2nd

DCA 1998) *citing* <u>Tampa Bay Publications, Inc. v. Watkins</u>, 549 So.2d 745 (Fla. 2nd DCA 1989); *see, also,* <u>Speer v. Mason</u>, 769 So.2d 1102 (Fla. 4th DCA 2000) (Multiplier between 2 and 2.5 applicable); <u>Zunde v. International Paper Co.</u>, 2000 WL 1763843 at *4 (M.D. Fla. 2000) (Application of a multiplier is appropriate when fees are awarded pursuant to Fla. Stat. § 448.08).

In this lawsuit, STW sought recovery of wages from Ms. Weinstock in its Counterclaim. *D.E. 42.* Mr. Minerley's e-mail to Mr. Richards dated May 14, 2020 specifically states that STW's Counterclaim against Ms. Weinstock will be for "**theft of wages**." *Exhibit "A."* Moreover, the primary issues in Ms. Weinstock's wage claim and STW's Counterclaim for conversion and unjust enrichment were significantly intertwined. *See, e.g.,* <u>Warshall v. Price</u>, 629 So.2d 905 (Fla. 4th DCA 1994). By virtue of the stipulation of dismissal with prejudice it is undisputed that Ms. Weinstock is the prevailing party on the Counterclaim concerning the wages sought by STW. *D.E. 94; D.E. 95.* STW chose to file the Counterclaims against Ms. Weinstock and cannot escape liability for attorney's fees now after it concedes defeat. Accordingly, Ms. Weinstock is entitled to recover attorney's fees and costs pursuant to Fla. Stat.§ 448.08 as she is the prevailing party in a dispute concerning the payment of wages.

### ii. Attorney's Fees are Warranted Pursuant to this Court's Inherent Authority

Even if the Court does not award Ms. Weinstock attorney's fees and costs pursuant to Fla. Stat. § 448.08, an award of fees is nevertheless appropriate pursuant to the Court's inherent authority. The Court may, under its inherent powers, sanction both an attorney **and** the attorney's law firm, and a party, for bad faith litigation conduct [emphasis added]. *See, e.g.,* <u>Spolter v. SunTrust Bank</u>, 403 F.App'x 387, 391 (11th Cir. 2010) (affirming fee award against individual attorney and his law firm pursuant to the Court's inherent powers); *see, also,* <u>Herard v. ATN Rest., Inc.</u>, 2008 WL 123596, at *5 (S.D. Fla. 2008) (awarding fees against plaintiff's law firm in FLSA case under court's inherent powers). The Court's inherent powers exist independent of any other procedural rules which could be used to sanction the same conduct. *See, e.g.,* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 49 (1991). The Court's inherent power includes the power to assess attorney's fees and costs against an attorney when he has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46. Thus, a finding of bad faith is required to assess sanctions under the Court's inherent authority.

Several factors demonstrate that STW and its counsel pursued the Counterclaim against

Ms. Weinstock in bad-faith. The undersigned firm sought any factual information that could provide a basis for Counterclaims STW wished to pursue. *Exhibit "B."*  Notwithstanding repeated requests for actual evidence to support the Counterclaim it filed, STW (through Mr. Minerley) refused to engage and provide this basic information. *Id.* It is without question that the actual filing of the Counterclaim (in the middle of Mr. Brown's deposition) was certainly not done in good-faith.  *D.E. 54-1.* Simply put, there is no valid justification for Mr. Minerley to have filed the Counterclaim during the middle of a deposition. This is only magnified by the fact that Mr. Richards had repeatedly requested information concerning the filing of the Counterclaim in the days leading up to Mr. Brown's deposition to no avail.  At the close of discovery, STW had failed to disclose any damage calculation within its Rule 26(a) disclosures.  Moreover, STW's own human resources director testified that Ms. Weinstock did not commit any type of "theft" of wages. *Exhibit "A."*  Mr. Brewster testified that Ms. Weinstock received payment when she was not physically in the office because she was employee of the month or was otherwise working remotely via text and e-mail on those days.  *Exhibit "A;" D.E. 68-2 at pp.173:5.* After this testimony STW could not continue to pursue the Counterclaim any further in good-faith. STW's decision to (i) oppose the Motion for Summary Judgment on issues concerning the Counterclaim; and (ii) continue to pursue the Counterclaim by filing motions in limine and other pre-trial pleadings vexatiously multiplied these proceedings further. There were no quantifiable damages actually sought or disclosed by STW and evidence negated the claim. At a minimum, STW and its counsel should be held jointly and severally liable for the fees incurred by Ms. Weinstock in defending the Counterclaim after the Bobby Brewster deposition. However, because there is no evidence that STW ever intended to actually follow through with the Counterclaim the fees should be awarded from the date of the filing of the Counterclaim on May 22, 2020.

### iii.    Attorney's Fees are Warranted Under 28 U.S.C. § 1927

Section 1927 allows a party to recover attorney's fees and costs from opposing counsel who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *See, e.g.,* Murray v. Playmaker Services, LLC, 548 F.Supp.2d 1378, 1382 (S.D. Fla. 2008) (Counsel liable for opposing party's attorney's fees due to counsel multiplying the proceedings).  As an officer of the court, every attorney has a duty to be candid and loyal and an attorney's duty to zealously prosecute a case for his client cannot outweigh is or

her obligation to the court.  *Id. citing* Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1546-47 (11th Cir. 1993).  When an attorney "knows or reasonably should know that a claim pursued is frivolous… a trial court does not err by assessing fees attributable to such actions against the attorney."  *Id. citing* Jones v. Continental Corp., 789 F.2d 1225, 1230 (6th Cir. 1986).  An attorney who fails to abandon a frivolous claim is responsible for his opponent's attorney's fees incurred from the point at which counsel should have been aware that a suit would be meritless.  *Id.*  To impose sanctions under 1927, the Court must find: (1) Plaintiff's counsel engaged in unreasonable and vexatious conduct; (2) which multiplied the proceedings; and (3) the amount of the sanction must bear a financial nexus to the excess proceedings.  *See, e.g.,* Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997).  The standard for imposing sanctions under Section 1927 turns on the attorney's objective conduct as compared to how a reasonable attorney would have acted under the circumstances.  *See, e.g.,* Collar v. Abalux, Inc., 2018 WL 3328682 (S.D. Fla. 2018) *citing* Norelus v. Denny's, Inc., 628 F.3d 1270, 1291 (11th Cir. 2010) (Counsel's conduct is to be evaluated under an objective standard such that 1927 sanctions are appropriate even if the attorney does not act knowingly or malevolently).

For the same reasons articulated above Mr. Minerley should be jointly and severally liable for the attorney's fees incurred by Ms. Weinstock in defending against the Counterclaim under Section 1927.  Mr. Minerley has been a licensed Florida attorney for nearly 35 years and has been board certified in Business Litigation and Civil Trial Law since 1996 and 1997, respectively.  *D.E. 54-4.*  The disclosure requirements set forth within Fed. R. Civ. P. 26(a) are unambiguous and abundantly clear. *Fed. R. Civ. P. 26(a).* It is inconceivable that an attorney with Mr. Minerley's credentials and experience would believe that STW could violate Rule 26 yet somehow proceed on its Counterclaim in good-faith despite its failure to articulate any actual damages it was seeking. *See* Celebration, 2018 WL 10799298 at *3-4 (S.D. Fla. Aug. 22, 2018) (Court precluded party from introducing evidence regarding damages at trial as a sanction under Rule 37); Snead v. EOG Resources, Inc., 2018 WL 1151137 at *3 (W.D. Tex. Feb. 16, 2018); *see, also,* Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175, 1179-80 (9th Cir. 2008); *Fed. R. Civ. P. 37(c)(1)* ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use or identify that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or harmless").  This issue was more thoroughly briefed in Plaintiff's Motoin in Limine. *D.E. 77.* Mr. Minerley

vexatiously multiplied these proceedings when he opposed summary judgment on issues concerning the Counterclaim after Mr. Brewster's testimony and after STW's failure to disclose damages at the close of discovery.  This resulted in unnecessary increased litigation expenses and delay of a resolution of this matter.  This is all to say nothing of the fact that Mr. Minerley initially represented that a subsequent lawsuit would be filed against Ms. Weinstock as opposed to a Counterclaim.[5]  The Court should, most respectfully, order that Mr. Minerley is jointly and severally liable with STW for all attorney's fees and costs incurred by the undersigned counsel.

### b.  Reasonable Hourly Rates

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *See, e.g.,* Toledo v. Vioss Vision, Inc., 2019 WL 5689246 at *2 (S.D. Fla. 2019) *citing* Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  This amount is typically referred to as the "lodestar."  *Id. citing* Thornton v. Wolpoff & Abramson, L.L.P., 312 F. App'x 161, 163-64 (11th Cir. 2008).  The resulting fee carries a presumption that it is reasonable.  *Id. citing* Blum v. Stenson, 465 U.S. 886, 897 (1984).  The burden of establishing the number of hours reasonably expended, lies with the proponent, and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.  Similarly, the party seeking fees has the burden of establishing that the hourly rates requested are reasonable.  *See, e.g.,* Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  Once calculated, the lodestar may then be adjusted upward or downward based upon the other considerations made by the Court.  Hensley, 461 U.S. at 433-47.

When determining a reasonable hourly rate, the rate should be "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *See* Norman, 836 F.2d at 1299.  "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence."  *Id.*  On the issue of a reasonable rate, the Court is itself an expert and can make an informed judgment as to a proper award of fees even without the benefit of outside testimony.  *Id.* at 1303; *see, also,* Loranger, 10 F.3d at 381.

---

[5] A Motion for Sanctions was filed against Defendants and Mr. Minerley in this case but was never adjudicated. That motion identifies other specific instances and discovery violations that occurred during this lawsuit and increased the litigation costs. *D.E. 39.*

### A) <u>Jordan Richards, Esquire</u>

Plaintiff's lead counsel, Jordan Richards, Esquire ("Mr. Richards") seeks a reasonable hourly rate of $375.00 for work performed on this case. *Exhibit "A."* Mr. Richards has been approved at $400.00 per hour and $350.00 per hour for his work on FLSA cases in the Southern District of Florida on multiple occasions. *See, e.g.,* <u>Joynt v. J.W. Lee, Inc. d/b/a Scarlett's</u>, *S.D. Fla. Case No. 0:20-cv-61580-WPD/Snow* at D.E. 28 (Nov. 6, 2020) (report and recommendation approving adopted in full); <u>Jiminez v. Alpine Towing, Inc., et. al.</u>, *S.D. Fla. Case No. 1:19-cv-21643-KMM; see, also,* <u>Fish v. Ely's Tire Inc., et. al.</u>, *S.D. Fla. Case No. 0:19-cv-61068-KMM;* <u>Vanderbilt v. Boat Bottom Express, LLC, et. al.</u>, *S.D. Fla. Case No. 4:18-cv-10261-JLK;* <u>Carey v. EWPB LLC</u>, *S.D. Fla. Case No. 9:19-cv-80811-DMM* (Judge Middlebrooks approved Mr. Richards at $350.00 per hour and acknowledged that this is imminently reasonable because other courts have approved him at $400.00 per hour); <u>Conrey v. Bagel Way Kosher Way, Inc., et. al.</u>, *S.D. Fla. Case No. 18-cv-22795-DPG* (Awarding Mr. Richards $400.00 per hour in FLSA case).

Mr. Richards submits that the $375.00 per hour sought for his work on this case is reasonable in light of the outcome obtained for Ms. Weinstock, his prior experience in federal litigation matters, and the fact that other Courts have regularly awarded Mr. Richards $400.00 per hour and $350.00 per hour for his work on FLSA cases.[6] *Id.* Mr. Richards is a graduate of the Benjamin N. Cardozo School of Law at Yeshiva University in New York and has practiced law in the State of Florida since 2014. *Exhibit "A."* Before engaging in private practice, Mr. Richards began his legal career as a prosecutor in the State Attorney's Office for the 17th Judicial District where he litigated dozens of trials to verdict. *Id.* Mr. Richards is licensed to practice in all state and federal courts throughout Florida, including the United States District Court for the Southern District of Florida, the Middle District of Florida, and the Northern District of Florida. *Exhibit "A."* Mr. Richards is also licensed to practice in the State of Illinois as well as the United States District Court for the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, the District of Colorado, and the District of New Mexico. *Id.* On the appellate level, Mr. Richards is licensed to practice before the Eleventh Circuit Court of Appeals and was recently

---

[6] Prior to filing the instant motion, Mr. Richards advised STW and its counsel that he has been approved at $350.00 and $400.00 per hour in the Southern District of Florida and that the associate attorneys have been approved at $225.00 per hour.

admitted to practice before the United States Supreme Court.  *Id.* Mr. Richards is currently pending admission to practice in New York.  *Id.*  Mr. Richards was recently recognized through peer review as a Super Lawyers Rising Star for 2020 in the area of Labor and Employment Law and has been rated AV Pre-Eminent by Martindale Hubbell.  *Id.*  To date, Mr. Richards has appeared as counsel in over 200 federal lawsuits.  *Id.*  The vast majority of these claims arise under the FLSA or involve claims arising under other federal employment and/or consumer protection laws.

### B)  Jake Blumstein, Esquire

Associate attorney Jake Blumstein, Esquire ("Mr. Blumstein"), seeks a reasonable hourly rate of $250.00 per hour for work performed on this case.  *Exhibit "B."*  Mr. Blumstein was approved at $225.00 per hour when he was a first year associate attorney.  *See, e.g.,* Lovett v. KS Janitorial Services, Inc., M.D. Fla. Case No. 8:20-cv-1511 (Aug. 11, 2020) (Finding Mr. Blumstein's hourly rate of $225 per hour in FLSA case to be reasonable).  Although Mr. Blumstein is a second-year associate attorney, he has over two (2) years of experience working on federal employment litigation matters during the time he clerked with USA Employment Lawyers – Jordan Richards PLLC while he was in law school.  *Id.*  Other courts in the Southern District of Florida have awarded first-year associate attorneys at USA Employment Lawyers – Jordan Richards PLLC $225.00 per hour for work performed on cases arising under the FLSA.  *See* Jiminez v. Alpine Towing, Inc., et. al., *S.D. Fla. Case No. 1:19-cv-21643-KMM* (Awarding first year associate $225 per hour in FLSA case)*; see, also,* Fish v. Ely's Tire Inc., et. al., *S.D. Fla. Case No. 0:19-cv-61068-KMM* (Awarding first year associate $225 per hour in FLSA case)*;* Vanderbilt v. Boat Bottom Express, LLC, et. al., *S.D. Fla. 4:18-cv-10261-JLK;* Carey v. EWPB LLC, *S.D. Fla. Case No. 9:19-cv-80811-DMM*. Additional background information to justify the rate sought is found within Mr. Blumstein's declaration attached hereto.  *Exhibit "B."*

### c.  Amount of Hours Billed by Each Time Keeper

There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer. *See, e.g.,* Norman, 836 F.2d at 1301-02. Where more than one attorney is involved, the applicant must demonstrate that the time requested reflects the distinct contribution of each attorney, and the customary practice of multiple lawyer litigation. *See, e.g.,* ACLU of Ga., 168 F.3d at 432.  Furthermore, **a defendant's vigorous defense of an FLSA case regularly contributes to the price tag on a prevailing Plaintiff's attorney fee**

**award**.  *See, e.g.*, Powell v. Carey Intern., Inc., 547 F.Supp.2d 1281, 1297 (S.D. Fla. 2008) (Strategy implemented by the Defendants necessarily required Plaintiff's counsel to expend more time and effort which drives up the ultimate charge of attorney's fees billed to an FLSA defendant).

Counsel for Plaintiff have carefully reviewed their billing records and have made voluntary reductions which have reduced the amount of attorney's fees sought in an effort to narrow these issues and avoid unnecessary litigation.  More specifically, the undersigned firm has eliminated any time entries solely related to the FLSA claim. Prior to the preparation of this Motion, Mr. Richards offered to reduce the total amount of attorney's fees and costs sought in defending the Counterclaim to $25,000.00 – a more than 50% reduction of the total amount of time that was actually incurred by the Law Firm in defending against the Counterclaim.  STW refused this offer. Accordingly, each timekeeper seeks fees for the following amounts (which have been reduced) because each task performed by the respective timekeeper was reasonably necessary to achieve the complete victory for Ms. Weinstock on the Counterclaim:

| | | | |
|---|---|---|---|
| 1) | Mr. Richards: | 75.50 Hours | $28,312.50 |
| 2) | Mr. Blumstein: | 68.52 Hours | $17,130.00 |

| | | |
|---|---|---|
| **TOTAL:** | **144.02 Hours** | **$45,442.50** |
| | | **x 1.5 (multiplier under F.S. 448.08)** |
| | | **$68,163.75** |

*Exhibit "A;" Exhibit "B."*

## A)  Specific Categories of Billing

### Correspondences and Conferrals with Opposing Counsel Concerning Counterclaim

As evident from information presented earlier in this motion, STW refused to disclose the actual basis for the Counterclaim.  *Exhibit "A;" Exhibit "B."*  This required the undersigned firm to dedicate an unusually large amount of time to attempting to confer on various issues without escalating the situation.  *See, e.g.*, Tyler, 2005 WL 6148128 at *5 ("The defendant cannot litigate tenaciously, and then be heard to complain about the time necessarily spent by the plaintiff in response") *citing* Heder v. City of Two Rivers, 255 F.Supp.2d 947, 957 (E.D.Wis. 2003) *quoting* City of Riverside v. Rivera, 477 U.S. 561, 580-81 (1986).  Mr. Richards sent written correspondences on May 20, 2020, June 8, 2020, and June 25, 2020 in an effort to resolve all of the issues in this case.  *Exhibit "A."*  Each of these went ignored.

Mr. Blumstein incurred a total of **2.96 hours** of work corresponding with counsel for STW via e-mail and telephone regarding the Counterclaims.  *Exhibit "B."*  In total, Mr. Richards

incurred **1.52 hours** engaging in e-mail and phone correspondences with opposing counsel. *Exhibit "A."* More detailed explanations of these conferrals are found within the lodestar.

<u>Motion for Summary Judgment on the Counterclaim</u>

Mr. Richards spent a considerable amount of time preparing the Motion for Partial Summary Judgment. *See* <u>Tyler</u>, 2005 WL 6148128 at *5. In total, Mr. Richards incurred 45.56 hours drafting, researching, editing, and filing the Motion for Partial Summary Judgment [D.E. 65] and accompanying Reply Memorandum [D.E. 74]. Because the Motion for Partial Summary Judgment also moved on issues relative to the FLSA claim, Mr. Richards has reduced this amount of time by 50% to be compensated for work performed relative to the Counterclaim in the amount of **22.78 hours**. *See, e.g.,* <u>Madden v. Just Believe Recovery Center, LLC</u>, 391 F.Supp.3d 1121, 1126-27 (S.D. Fla. 2019) (20 hours is a reasonable amount of time for an attorney to spend drafting motion in an FLSA case); *see, also,* <u>Abrams-Jackson v. Avossa</u>, 2017 WL 5157243 (S.D. Fla. 2017) (Hours incurred researching issues to support a motion are compensable). *Exhibit "A."*

<u>Review of Pertinent Case Law on Specific Issues</u>

The legal issues in this case focused primarily on the sufficientcy of the conversion and unjust enrichment counterclaims which encompassed a myriad of decisions form across the State of Florida. <u>Abrams-Jackson v. Avossa</u>, 2017 WL 5157243 (S.D. Fla. 2017) (Hours incurred researching are compensable). Mr. Blumstein incurred a total of **14 hours** researching these specific issues and clarifying the current state of the law on these particular points of law. *Exhibit "B."* More specifically, Mr. Blumstein spent 9 hours researching the viability of the unjust enrichment and conversion claims in light of STW's failure to make a pre-suit demand. *Id.* A collection of specific cases analyzed by Mr. Blumstein is found within the lodestar. *Id.* Several of these cases were cited in the Motion for Summary Judgment. *Id.* An additional 2 hours of research was performed on the practical effect the failure to comply with Rule 26(a) would have on the viability of the claims. *Id.* Mr. Blumstein spent .5 hours reviewing and analyzing this case law with Mr. Richards. Furthermore, Mr. Blumstein also spent 2.5 hours researching Ms. Weinstock's entitlement to attorney's fees under applicable law – a central issue in this motion. This research was crucial to the success in this case because this research allowed Mr. Blumstein to compare the facts of these cases to the specific facts in this case and what the likely outcomes would be so that the undersigned firm could appropriately counsel Ms. Weinstock on the issue of resolving these claims.

15

Mr. Richards does not seek any compensable time for legal research.

<u>Discovery</u>

A grand total of 6 depositions were taken in this case.  Ms. Weinstock took 3 depositions and the Defendants took 3 depositions.  Mr. Blumstein incurred a total of **18.5 hours** attending the depositions of Ms. Weinstock (8 hours), Kathy Brown (5 hours), and Bobby Brewster (5.5 hours).  *Exhibit "B."*  Meanwhile, Mr. Richards incurred a total of **21 hours** attending the depositions of Ms. Weinstock (8 hours), Lee Brown (7 hours), Mr. Brewster (4.5 hours), and Mary Delk (1.25 hours).  Attendance at each of these depositions was necessary to obtain the outcome achieved for Ms. Weinstock in regard to the Counterclaim.  No billable time is sought for the deposition of Peter Palmiotto – a former supervisor at STW who only provided testimony regarding the FLSA claim in this lawsuit.

In addition to seeking time for attending the depositions, Mr. Richards also incurred **8.09 hours** preparing for the deposition of STW's corporate representative.  This preparation time involved the review of hundreds of pages of documents.  This deposition was the pivotal point in this lawsuit.  *Id.*  It was during the 5th hour of this deposition when Mr. Minerley filed the Counterclaim against Ms. Weinstock.  *Exhibit "A."*  This alone warrants the recovery of time spent deposing the STW corporate representative.  Mr. Richards additionally spent **3 hours** preparing Ms. Weinstock for her deposition.  *Id.*  Mr. Blumstein incurred **4 hours** of billable time responding to discovery requests served by STW and related to the Counterclaim.  *Id.*

<u>Compliance with Court Orders and Conducting Necessary Conferrals</u>

Mr. Blumstein incurred a total of **24.87** hours complying with Court ordered deadlines and performing necessary work on various pleadings related to these orders.  This time is broken down as follows: drafting answer and affirmative defenses to Counterclaim (4 hours), drafting Ms. Weinstock's fact witness list (0.5 hours), drafting Motion in Limine (5 hours), edited and filed motion in limine (1.09 hours), drafting joint pretrial stipulations (2 hours), drafting jury instructions (5.5 hours), drafting exhibit list for trial (0.59 hours), drafting special interrogatories for the jury (0.75 hours), compiling exhibits A and B to motion in limine (0.25 hours), drafted objections to deposition designations from STW (3.5 hours), and conferred with opposing counsel on deposition designations (1.19 hours).  *Exhibit "B."*  The vast majority of this work could have been avoided had STW not insisted on proceeding with its meritless claim.

Mr. Richards incurred a total of **10.29 hours** performing work on pleadings reasonably

necessary to obtain the outcome achieved for Ms. Weinstock. *Exhibit "A."* This time is broken down as follows: drafted motion for sanctions (3.75 hours), continued drafting motion for sanctions (1.5 hours), finalized motion for sanctions (0.42 hours), drafted declaration of Jordan Richards (0.42 hours), drafted declaration of Jake Blumstein (0.42 hours), filed motion for sanctions (0.09 hours), began drafting Motion in Limine (0.75 hours), began edits to motion in limine (0.75 hours), began drafting Response to STW's Motion in Limine (0.75 hours), filed response to D.E. 61 (0.09 hours), reviewed court order granting extension of time to file Reply in Support of D.E. 65 (0.09 hours), drafted deposition designations (1.17 hours), and filed Ms. Weinstock's deposition designations (0.09 hours).

<u>Necessary Intra-Office Conferrals and Communications</u>

Intra-office conferrals are necessary to the success of a case and are therefore compensable. *See, e.g.,* <u>Ponce</u>, 2012 WL 13008156 at *6 ("[I]t would be difficult, if not foolish, for an attorney to handle a litigation matter without consulting or brainstorming with colleagues"). Mr. Blumstein incurred a total of **1.5 hours** engaging in inner office conferrals with Mr. Richards during this case which includes conferring on the Counterclaims filed against Ms. Weinstock (0.5 hours) and reviewing transcript from Corporate Representative's deposition and discussing same with Mr. Richards (1 hour). *See, e.g.,* <u>Oklahoma Natural Gas Co. v. Apache Corp.</u>, 355 F.Supp.2d 1246, 1262-63 (N.D. Okla. 2004) ("Lawyers working together on a case must communicate with each other and that communication may spare the client duplication of effort"); *see, also,* <u>In re Frontier Airlines</u>, 74 B.R. 973, 977-78 (Bankr.D.Colo. 1987) (where multiple attorneys perform interrelated functions that require "some degree of coordination and communication among them… intraoffice conferences among counsel are not only expected but are necessary, and there is no reason by compensation should not be provided for such services"). *Exhibit "B."*

Separate and apart from the time sought by Mr. Blumstein, Mr. Richards seeks **2.39 hours** for non-duplicative time incurred conferring with Mr. Blumstein on the documents produced by STW concerning Ms. Weinstock's clock-in times (0.59 hours), reviewing the transcript of and statements made by Lee Brown with the firm's law clerks for additional follow up and cross referencing (1.75 hours), and conferring on the statements and conduct of Mr. Minerley during the corporate representative deposition (0.59 hours). *Exhibit "A."*

<u>Preparation for Mediation</u>

Mr. Richards incurred a total of **1.43 hours** drafting and sending a confidential and

privileged case summary that is necessary and required under S.D. Fla. L.R. 16.2.

Mr. Blumstein incurred a total of **0.60 hours** reviewing and preparing Ms. Weinstock for mediation.  *Exhibit "B."*  Mr. Richards occurred an additional **0.42 hours** having discussions with Ms. Weinstock ahead of the mediation to include additional information in the privileged case summary for the mediator.  *Exhibit "A."*

Mediation

Mr. Richards incurred a total of **5 hours** attending mediation in this case.  *Exhibit "A."* Given Mr. Blumstein's involvement and relationship and communications with the client, his attendance at mediation was necessary.  *Exhibit "B."*  However, no time is sought for Mr. Blumstein's attendance at mediation.

Necessary Communications with Client

Given the fact that Ms. Weinstock was required to defend against a baseless Counterclaim in federal court a significant amount of time was incurred communicating and providing counseling to her.  Much of this time has been voluntarily reduced by undersigned counsel. However, Mr. Blumstein seeks **2.09 hours** of time for five (5) communications with the client that were absolutely necessary in this case: answering client's questions about the threatened Counterclaim (0.75 hours), conversation with the client after the Counterclaim was filed to answer additional questions (0.42 hours), conversation with the client to determine if there was any basis for the Counterclaim (0.5 hours), conversation to discuss the possibility of a resolution and to gain authority to settle the case (0.17 hours), and providing update to Ms. Weinstock on the status of the case (0.25 hours).  *Exhibit "B."*

Drafting Verified Motion for Attorney's Fees and Costs

STW advanced an aggressive defense strategy in this case which has continued throughout the litigation of the issue of attorney's fees.  Mr. Richards made several attempts to offer STW the opportunity to resolve these issues at a greatly discounted rate.  STW *could have* resolved the issues in this case at any time and adjudicated the issue of attorney's fees.  However, STW refused to do so.  STW also could have resolved on the issue of attorney's fees and costs related to the Counterclaim for $25,000.00 back on December 3, 2020.  *Exhibit "A."*  They refused.  *Id.*  A total of **1.25 hours** was spent by Mr. Richards compiling and reviewing his lodestar along with the dozens of pages of lodestars for Mr. Blumstein, Ms. Scott, and Ms. Petrosino to ensure no duplicative billing occurred and no fees were being sought for the FLSA claim so they could be

served on STW as required under S.D. Fla. L.R. 7.3.  *Id.*  Mr. Richards then incurred **9 hours** drafting, editing, preparing, and filing this Verified Motion for Attorney's Fees and Costs.  *Id.*  A total of **4 hours** was spent by Mr. Richards editing the motion and drafting and compiling exhibits for the Declarations for himself and Mr. Blumstein.  *Id.*  This is a grand total of **13.25 hours**. While these time entries are not included on the lodestar, Mr. Richards testifies as to the time incurred within his declaration.  *Id.*  Mr. Richards reserves the right to seek additional fees to be incurred in the necessary conferrals under S.D. Fla. L.R. 7.3 prior to filing this motion.  *See, e.g.,* Martin v. University of South Alabama, 911 F.2d 604, 610 (11th Cir. 1990) ("It is well settled that time expended litigating attorney fees is fully compensable"); *see, also,* Raetano v. M. Russell, LLC, 2010 WL 3259434 at *2 n. 3 ("Time expended litigating attorney's fees is compensable").

### d.  **Motion for Costs**

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute.  *See Fed. R. Civ. P. 54(d)(1).*  Rule 54(d) creates a presumption in favor of awarding costs to the prevailing party.  *See, e.g.,* Guillaume v. NY Bagel Boy, Inc., 2015 WL 13776788 at *4 (S.D. Fla. 2015) *citing* Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 639 (11th Cir. 1991).  Courts may only tax costs as authorized by statute. *See* EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) *citing* Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987).  Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).  *See* Guillaume, 2015 WL 13776788 at *4 *citing* Crawford Fitting Co., 482 U.S at 441-42; *see 28 U.S.C. § 1920.*

#### **Deposition Costs**

Deposition costs are recoverable pursuant to statute. *28 U.S.C. § 1920(2).*  Typically, deposition costs are recoverable when the party who was deposed was listed on the opposing party's witness list.  EEOC v. W&O, Inc., 213 F.3d 600, 621 (11th Cir. 2000).  In W&O, Inc., the Eleventh Circuit Court of Appeals explained that the "question of whether the costs for a deposition are taxable depends on the factual question or whether the deposition was wholly or partially "necessarily obtained for use in the case."  *Id.*  The Eleventh Circuit further explained that where the deposed witness was listed on the losing party's witness list, the costs associated with such depositions are properly taxable.  *Id.*  The court stated:

> Taxation of deposition costs of witnesses on the losing party's witness list is reasonable because the listing of those witnesses indicated both that the [party] might need the deposition transcripts

19

> to cross-examine the witness… and that the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery.

*Id.*

In this case, STW filed their Counterclaim in the middle of Lee Brown's deposition. *D.E. 54-1.* Mr. Brown testified to having knowledge of STW's Counterclaim and his testimony concerning the Counterclaim was used in summary judgment pleadings. *Id.* Accordingly, the costs associated with Mr. Brown's deposition should be taxed in the amount of **$2,114.65** as a matter of course as this transcript was used in the summary judgment pleadings that ultimately led to STW conceding defeat on its Counterclaim.[7] *Exhibit "A."* The deposition of Kathy Brown was also used in the summary judgment pleadings pertaining to the Counterclaim and costs from this deposition are therefore recoverable in the amount of **$1,313.85**. *Exhibit "A."* Ms. Weinstock seeks a total of **$3,428.35** in reimbursable litigation costs for prevailing on the Counterclaim.

## IV.    CONCLUSION

WHEREFORE, Counter-Defendant, VERED WEINSTOCK, respectfully requests that this Court award her counsel USA Employment Lawyers – Jordan Richards PLLC reasonable attorney's fees against Defendant, STORM TIGHT WINDOWS, INC. and its counsel Kenneth Minerley, Esquire, jointly and severally, in the amount of **$68,163.75**, and costs in the amount of **$3,428.35** incurred in successfully defending the Counterclaim and provide any and all further relief as may be deemed just and equitable under the circumstances.

### CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3) & S.D. FLA. L.R. 7.3

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the undersigned firm conferred with Defendants regarding the relief sought within this Motion. Counsel for Ms. Weinstock served STW with a copy of the foregoing motion on December 3, 2020, with attached exhibits, and otherwise attempted to comply with the requirements set forth within S.D. Fla. L.R. 7.3. In furtherance of their attempt to confer in good-faith and avoid litigation of these issues, before preparing the fee motion, on December 3, 2020, undersigned counsel offered to reduce the total amount of attorney's fees and costs sought for the Counterclaim to $25,000.00 – an amount that is equal to what Defendants will be paying in attorney's fees and costs for Ms. Weinstock's FLSA claim. STW refused this offer and have refused to pay anything to resolve these issues.

---

[7] Receipts for court reporter services are attached to Mr. Richards' declaration.

During the conferral STW confirmed that it does not object to the hourly rates sought by the timekeepers in this case. The Parties have been unable to reach agreement on these issues.

## VERIFICATION OF COUNSEL

I hereby verify that all information herein is true and correct.

By: /s/ Jordan Richards, Esq.
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

**Dated this 7th day of December 2020.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS PLLC**
805 E. Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
(954) 871-0050
*Counsel for Counter-Defendant Vered
Weinstock*

By: /s/ Jordan Richards, Esq.
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
jordan@jordanrichardspllc.com
melissa@jordanrichardspllc.com
jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on December 7, 2020.

By: /s/ Jordan Richards, Esq.
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

21

## <u>SERVICE LIST</u>

**KENNETH L. MINERLEY, ESQUIRE**
Florida Bar No. 521840
ken@minerleyfein.com
**JACKSON PELLINGRA, ESQUIRE**
Florida Bar No. 1011077
jackson@minerleyfein.com
fileclerk@minerleyfein.com
litigation@minerleyfein.com
**MINERLEY FEIN, P.A.**
1200 N. Federal Highway, Suite 420
Boca Raton, FL, 33432
*Counsel for Defendants*